UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-CR-100-JED |
| ) | |
| IBANGA ETUK, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

The Court has for its consideration Defendant Ibanga Etuk's Objection (Doc. 76) and Motion for Hearing (Doc. 77). Mr. Etuk seeks review of United States Magistrate Judge Jodi F. Jayne's Order of Revocation and Detention (Doc. 75).

### I.   Background

**A.   The Charges Against Mr. Etuk**

The government has accused Mr. Etuk of conspiring with others to defraud the federal Covid 19 relief plan known as the Paycheck Protection Program (PPP). (*See* Second Superseding Indictment, Doc. 46). Under the program, banks and credit unions offered federally guaranteed loans to eligible businesses for use on payroll expenses and other specified costs in the hopes that this would discourage participating businesses from terminating employees as the economy shrank due to the global pandemic. The PPP application required a business to provide certain information regarding its monthly payroll expenses and the number of employees it had. In addition, the business was required to provide payroll records and documentation that it had been in business as of February 15, 2020.

According to the government, Mr. Etuk and his coconspirators sought to defraud PPP by creating various business entities and then submitting bogus applications on their behalf. In all,

Etuk and others allegedly applied for loans worth about $5.4 million on behalf of 22 entities. They succeeded in fraudulently obtaining $995,385 in loans, according to the indictment.

In connection with these allegations, Mr. Etuk stands charged with two counts of bank fraud (Counts 2 and 3) in violation of 18 U.S.C. § 1344(2), one count of conspiracy to commit bank fraud (Count 1) in violation of 18 U.S.C. § 1349, one count of aggravated identity theft (Count 7) in violation of 18 U.S.C. § 1028A(a)(1), and three counts of engaging in monetary transactions in property derived from specified unlawful activity (Counts 15–17) in violation of 18 U.S.C. § 1957(a).

**B.     Alleged Violations and Proceedings Below**

After his arrest on July 22, 2020, the Court granted Mr. Etuk conditional release pending trial pursuant to 18 U.S.C. § 3142(c). (Order Setting Conditions of Release, Doc. 13). On January 11, 2021, the Office of Probation petitioned the Court for a summons directing Mr. Etuk to show cause why his release should not be revoked for violation of Condition 7(m) and Condition 7(p)(4) of the order granting pretrial release. (Doc. 64). Condition 7(m) required Mr. Etuk to "advise any possible third parties who may be at risk because of your past criminal conviction(s) and/or the charged offense." Condition 7(p)(4) provided that he would "not make application for any loan or enter into any new credit arrangement, without first consulting the U.S. Probation Office."

**C.     The Record Below**

On January 13, 2021, the Court issued the requested summons. On January 20, 2021, the government moved for a hearing and requested that Mr. Etuk be detained pending trial. Judge Jayne held a hearing on the matter February 1, 2021.

At the hearing, the government proffered, without objection, the testimony of Senior Probation Officer Garrett Thomas and Special Agent Mike Bernier of the Federal Reserve Board Office of Inspector General.

The proffered testimony of Officer Thomas was substantially as follows: During the latter part of 2020, Mr. Etuk had a rent-to-own agreement with a man named Lonnie Trecek related to a building Mr. Trecek owned at 5553 S. Peoria Avenue in Tulsa. In addition to the purchase agreement, Mr. Trecek had hired Mr. Etuk's company, Love Building LLC, to perform $50,000 in repairs to the building. Mr. Trecek made payments pursuant to that agreement over the course of two months in October and November 2020. When Mr. Thomas spoke with Mr. Trecek on December 1, 2020, Mr. Trecek stated that he was unaware of Mr. Etuk's pending charges.

The government proffered that Etuk also entered into another agreement, executed January 4, 2021, with Two Guys Investments LLC, a business owned by Mr. Trecek. In it, Mr. Trecek's business agreed to lend Mr. Etuk personally $8,000 so that he could conduct additional renovations to the 5553 building. (*See* Pet. Ex. B., Doc. 64 at 9–17). According to a promissory note memorializing the agreement, Mr. Etuk agreed to give Mr. Trecek's business a mortgage interest in a piece of property adjacent to the 5553 building in exchange for the loan.

The proffered testimony of Agent Bernier was substantially as follows: Agent Bernier spoke with Mr. Trecek about Mr. Etuk on January 7, 2021. About a week later, Mr. Trecek called Agent Bernier and asked whether there were still charges pending against Mr. Etuk. According to Mr. Trecek, Mr. Etuk had recently indicated that his lawyer believed the government was considering dropping the charges against him. Mr. Trecek provided the government with a record of the exchange, which had occurred by text message on January 11, 2021. (Pl.'s Ex. 1).

Mr. Etuk testified in person at the hearing. According to Mr. Etuk, he attempted to tell Mr. Trecek about his legal issues during a meeting at Mr. Etuk's office in October 2020:

> I told him that I have — I have a charge. I have an issue with the government. This is what is going on. And when he left that meeting, his response wasn't what I thought, because I thought he was going to be very mad with me and all of that. But — so I was wondering did he really understand what I was — I was saying.

3

(Doc. 82 at 24–25 [Tr. p. 24:21–25:1]). Mr. Etuk further testified that the $8,000 "loan" came about because he had fallen behind on his rent. Mr. Trecek and his partner had placed $50,000 in an account for the work, but the bank withdrew $8,000 for missed lease payments. Therefore, he said, he needed the additional funds to cover the remaining expenses. He admitted that his statement about the charges being dropped was not accurate. He said that he was thinking about the conspiracy charge, which the government had indicated it was willing to drop as part of a plea deal.

Mr. Etuk further testified that he tried his best to keep in touch with his probation officer. To that end, he introduced several email exchanges that he and Mr. Thomas had beginning December 1, 2020.

In addition to his own testimony, Mr. Etuk introduced a letter from Mr. Trecek. (Def.'s Ex. 1). Dated January 22, 2021, and addressed "To Whom it may concern," the letter appears to have been written for the benefit of the Court in order to shed light on the nature of Mr. Trecek's relationship with Mr. Etuk. In the letter, Mr. Trecek stated substantially as follows: that Mr. Etuk entered into a lease-purchase agreement to buy a building owned by Brookside Executive Suites; that, as part of the agreement, Mr. Etuk had permission to upgrade the building, with all costs of rehab to be borne by Mr. Etuk's business, Love Buildings LLC; that a storm subsequently caved in the roof; that Mr. Etuk asked "if there was anyway [sic] possible to arrange for $50,000 to rehab the north east corner of the building"; that Mr. Trecek's company, Two Guys Investments, "funded an additional $50,000 to the purchase price of the building to be paid at the closing of the transaction"; that Two Guys released the money in installments at each phase of the project after receiving invoices from Mr. Etuk; that, "[a]t the end of December 2020," Mr. Etuk approached Mr. Trecek and his partner "asking if there was a possibility of funding an additional $8,000 to

4

complete the project"; that Two Guys "made a loan to Mr. Ibanga Etuk for $8,000"; that Two Guys wrote a check to him for that amount in exchange for a promissory note and mortgage on a piece of property adjacent to the building in question; and that the loan documents were executed on January 4, 2021. (*Id.*).

**D.     The Decision Below**

On February 2, Judge Jayne entered her Order revoking release and ordering Mr. Etuk to be detained. (Doc. 75). In her Order, Judge Jayne found by clear and convincing evidence that Mr. Etuk violated Condition 7(m) by accepting more than $40,000 in construction payments without first telling them about the charges pending against him. Applying the same standard, she also found that Mr. Etuk violated Condition 7(p)(4) by entering into the January 4, 2021, loan agreement without obtaining the permission of the United States Probation Office. Additionally, she found that Mr. Etuk was unlikely to comply with financial conditions should he remain free. In order to protect the financial safety of the community, she therefore revoked his bond and ordered him detained pending trial.

## II.     Legal Standards

When a magistrate judge enters an order detaining a defendant before trial, the defendant is entitled to seek review by the district court having original jurisdiction over the offense. *See* 18 U.S.C. § 3145(b). The district court's review of a detention order is de novo. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003). It is the district court's prerogative whether to hold an additional hearing. *See id.* at 617.

The statute governing revocation of pre-trial release provides that, a judicial officer "shall enter an order of revocation and detention" if, after a hearing, the officer

> **(1)** finds that there is--
>    **(A)** probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

> **(B)** clear and convincing evidence that the person has violated any other condition of release; *and*
>
> **(2)** finds that--
>> **(A)** based on the factors set forth in [18 U.S.C. § 3142(g)], there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>>
>> **(B)** the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b) (emphasis added). Thus, the statute calls for a two-step inquiry. At step one, the court must determine whether the evidence supports a finding that the defendant has violated the terms of his release. *See* § 3148(b)(1). At step two, the court must determine whether the evidence supports a finding that the defendant poses a safety or flight risk or is unlikely to abide by any condition or combination of conditions of release. *See* § 3148(b)(2).

### III. Discussion

As a preliminary matter, Mr. Etuk argues that the Court should hold a new hearing so he can present the testimony of Mr. Trecek. Nothing in the statute governing review of a detention order provides that a defendant is entitled to an additional hearing or to present new evidence. *See* 18 U.S.C. § 3145(b). Whether such a hearing is appropriate is the prerogative of the Court. *Cisneros*, 328 F.3d at 617; *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Court finds no reason to hear additional evidence in this case.

Judge Jayne gave Mr. Etuk the opportunity to call Mr. Trecek at the hearing. As the following exchange makes clear, Mr. Etuk's counsel, George Stidham, did not believe Mr. Trecek's testimony was necessary:

> THE COURT: Any other evidence you'd like to present at this time, Mr. Stidham?
> MR. STIDHAM: Your Honor, I absolutely do not believe the Court needs to hear from Lonnie [Trecek], but he's here by telephone if you would like to.
> THE COURT: All right. Thank you. I believe Mr. Trecek's letter dated January 22nd, 2021 is sufficient, and Mr. Etuk's testimony, so we will not require Mr. Trecek to testify by phone.

6

(Doc. 82 at 38 [38:10–38:18]). Other than Judge Jayne's adverse decision, Mr. Stidham offers no explanation for his sudden change of heart regarding the importance of Mr. Trecek's testimony. Hope for a different outcome is not a compelling reason to hold a new hearing.

> In his objection, Mr. Etuk describes Mr. Trecek's potential testimony as follows:
>
> Lonnie Trecek recalls being asked by Defendant Etuk to meet privately with him and was told the Defendant had "problems" with a PPP loan and his probation officer would be contacting Lonnie Trecek and [his business partner] Raymond Lord. They did their own research and found the current Indictment.

(Doc. 76 at 1). At best, such testimony would corroborate Mr. Etuk's claim that he met with Mr. Trecek in October and made some vague statements related to the charges against him, but that would be of no help to Mr. Etuk.

Condition 7(m) required Mr. Etuk to "advise any possible third parties who may be at risk" due to the charges against him. Compliance required more from him than leaving a trail of breadcrumbs that others might follow to discover the scope of the charges against him. Moreover, even if Mr. Trecek and his partner eventually found the current indictment by doing "their own research," the record shows that they only learned about the extent of the charges well after they had already paid him more than $40,000 to renovate their building. According to Officer Thomas, Mr. Trecek remained unaware of the charges against Mr. Etuk as of early December 2020. Compliance with Condition 7(m) would have entailed affirmative—and full—disclosure of the charges before entering into a business agreement of that scale. Finally, Mr. Etuk later told Mr. Trecek that the government was considering dropping the charges against him, which was untrue. Like Judge Jayne, the Court does not find it credible that Mr. Etuk would have confused the offer of a plea agreement for an offer to drop all charges. This suggests that, even after Mr. Trecek learned the extent of Mr. Etuk's legal exposure, Mr. Etuk was less than forthright about his situation.

With respect to Condition 7(p)(4), Mr. Etuk complains that Judge Jayne "displayed an inability to understand the unusual manner in which [Mr. Etuk] was being compensated" for the construction work on the building. (Doc. 76 at 1). Yet, nowhere in his objection does he explain why he believes Judge Jayne was confused or how this supposed confusion bears on his obligations under Condition 7(p)(4). In his reply brief, Mr. Etuk describes the $8,000 he received from Mr. Trecek and his partner as an "advance," but he cites nothing in the record to support this contention. All of the evidence presented at the hearing shows that the transaction was a loan. In his letter, Mr. Trecek calls it a loan, and the check he made out to Mr. Etuk says "loan" in the memo. Even Mr. Etuk, before catching himself, referred to it as a loan during his testimony. (Doc. 82 at 17 [17:17]).

In his reply brief, Mr. Etuk makes an abortive attempt to argue that the transaction, however it might be described, did not violate the terms of his release. He claims, citing no evidence or authority, that Condition 7(p)(4), "obviously refers to a conventional loan like the one he obtained from a bank for the Paycheck Protection Program ('PPP') loan [sic]." (*See* Doc. 81 at 1). This reading is at war with the plain language of the condition itself, which refers to "any loan or any new credit arrangement." (*See* Doc. 64 at 5, 6). The reference to "any" loan and "any" credit arrangement indicates that the condition was meant to be read broadly, to cover any loan whatever, formal or otherwise.

In sum, upon consideration of the briefs and de novo review of the record, the Court finds no error in Judge Jayne's decision to revoke Mr. Etuk's release and order him detained pending trial. Pursuant to 18 U.S.C. § 3148(b)(1), the Court finds:

    i. There is clear and convincing evidence that Mr. Etuk violated Condition 7(m) by failing to advise Mr. Lord and Mr. Trecek of the charges against him before agreeing to manage a $50,000 construction project.

> ii. There is clear and convincing evidence that Mr. Etuk violated Condition 7(p)(4) by soliciting and then accepting an $8,000 loan from Two Guys Investments LLC without first obtaining permission from his probation officer.

Pursuant to 18 U.S.C. § 3148(b)(2), the Court further finds:

> iii. No condition or combination of conditions can assure that Mr. Etuk does not pose a risk to the financial safety of the community. In reaching this conclusion, the Court has considered the factors enumerated in 18 U.S.C. § 3142(g). Specifically, the court finds that:
>
>> (1) The nature and circumstances of the charged offenses weigh in favor of detention. Mr. Etuk is charged with fraud on a large scale.
>>
>> (2) The available information suggests that the evidence against Mr. Etuk is strong. According to the affidavit submitted in support of the criminal complaint that opened this case, Mr. Etuk signed numerous loan documents containing obviously false statements. (*See* Doc. 1).
>>
>> (3) The Court has little information about Mr. Etuk's personal characteristics or history, as he refused to be interviewed by the Office of Probation. He has no criminal history or pending charges other than those alleged in this matter.
>>
>> (4) Mr. Etuk's release would put the community at financial risk because he has shown himself unwilling to be forthright about the charges against him when entering into financial relationships with others.
>
> iv. Given Mr. Etuk's disregard for the conditions placed on his previous release, and his lack of candor in dealing with his business partners, his probation officer, and the

Court, the Court finds that Mr. Etuk is unlikely to abide by any condition or combination of conditions of release the Court might impose.

### IV.    Conclusion

Because the Court's findings are consistent with those of Judge Jayne, the Court affirms her Order (Doc. 75).

SO ORDERED this 19th day of February, 2021.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT