## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Case No. 20-CR-0100-CVE-1 |
| | )        (21-CV-0512-CVE-CDL) |
| IBANGA ETUK, a/k/a Mark, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court are defendant Ibanga Etuk's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Dkt. # 209)[1]; plaintiff's response in opposition to defendant's § 2255 motion (Dkt. # 235); and defendant's emergency motion to expedite action on pending 28 U.S.C. § 2255 motion (Dkt. # 284.)  Under 28 U.S.C. § 2255, "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  Defendant argues that his attorney, G. Steven Stidham, was ineffective during his detention and change of plea hearings, and that his subsequent attorney, Eric Stall, was ineffective for failing to alert the Court to Stidham's alleged misconduct.  Dkt. ## 209, 210, 233.  The Court ordered plaintiff to respond to defendant's § 2255 motion, and plaintiff has filed a response (Dkt. # 235), including affidavits of Stidham and

---

[1]    The Court notes that defendant raises additional grounds for relief in his affidavit in support of his § 2255 motion (Dkt. # 210), as well as in Dkt. # 233, which states that it "supplements" his original § 2255 motion (Dkt. # 209).  Therefore, the Court considers Dkt. # 209 and the relevant portions of Dkt. # 210 and Dkt. # 233 together as one motion, but cites to Dkt. # 209 as the pending motion.

Stall, addressing defendant's allegations of ineffective assistance of counsel.  The deadline for defendant to file a reply in support of his § 2255 motion has expired, and defendant has not filed a reply.

## I.

On July 22, 2020, defendant was arrested on a criminal complaint, and Magistrate Judge Paul J. Cleary appointed Stidham to represent him.  Dkt. # 10; Dkt. # 11.  At the time, Judge Cleary released defendant on bond with conditions.  Dkt. # 13.  These conditions included, <u>inter alia</u>, financial conditions that defendant will "advise any possible third parties who may be at risk because of . . . the charged offense," and that defendant will "not make application for any loan or enter into any new credit arrangement, without first consulting with U.S. Probation Office [hereafter "probation office"]."  Dkt. # 13, at 2, 3.

On August 4, 2020, a grand jury returned an indictment charging defendant and a co-defendant, Olusola Ojo, with bank fraud conspiracy in violation of 18 U.S.C. § 1349, and seeking criminal forfeiture of at least $995,385, which were the proceeds obtained by defendants.  Dkt. # 17.  The case was randomly assigned to then-Chief Judge John E. Dowdell.  Kevin Adams entered an appearance on defendant's behalf as retained counsel.  Dkt. # 21.  Because defendant had retained counsel, Judge Dowdell granted Stidham's request to withdraw.  Dkt. # 28.

On September 10, 2020, defendant and Ojo were named in a four-count superseding indictment.  Dkt. # 32.  Count one realleged the bank fraud conspiracy and forfeiture allegation of the original indictment, counts two and three charged defendant and count four charged Ojo with bank fraud in violation of 18 U.S.C. § 1344(2).  Dkt. # 32.  On October 7, 2020, a grand jury returned a 17-count second superseding indictment charging defendant, Ojo, and defendant's wife

with offenses including bank fraud conspiracy in violation of 18 U.S.C. § 1349 (count one), bank fraud in violation of 18 U.S.C. § 1344(2) (counts two through six), aggravated identity theft in violation of 18 U.S.C. § 1028A (counts seven through nine), and unlawful monetary transactions in violation of 18 U.S.C. § 1957 (counts ten through seventeen).  Dkt. # 46.

The events giving rise to the indictments took place between April and August 2020, and involved defendant conspiring with others to profit from the Paycheck Protection Program (PPP), a program enacted by Congress to alleviate the economic impact caused by the COVID-19 pandemic, by creating fake businesses and applying for fraudulent loans.  Adams was subsequently discharged by the defendant, and Adams moved to withdraw as defendant's counsel.  Dkt. # 44.  Judge Dowdell granted his motion and reappointed Stidham to represent defendant.  Dkt. # 52.

On January 13, 2021, the probation office submitted a petition for summons for defendant on pretrial release, and Judge Cleary ordered the issuance of a summons for defendant to appear and show cause why his bond should not be revoked.  Dkt. # 64.  On January 20, 2021, plaintiff filed a motion for detention and hearing, citing violations of two conditions of pretrial release.  Dkt. ## 70, 71.  A detention hearing was held before Magistrate Judge Jodi F. Jayne on February 1, and February 2, 2021.  During the hearing, plaintiff and defendant presented evidence, and defendant testified on his own behalf.

On February 2, 2021, Judge Jayne revoked defendant's release order after finding that he violated its conditions by failing to advise third parties placed at risk by the charged offenses and by failing to obtain permission from the probation office prior to entering into a loan transaction.  Dkt. # 75.  As to the first violation, defendant accepted more than $40,000 in payments to oversee building repairs without adequately informing the relevant third parties.  Dkt. # 83, at 4.  As to the

3

second violation, defendant received a loan in the amount of $8,000 from the same relevant third

parties, for which "defendant put up a piece of his own land he owned . . . as collateral." Id. at 8.

Further, in a subsequent text exchange with one of the third parties, defendant "falsely informed [the

third party] the charges were likely to be dropped," even though defendant knew that all of the

charges against him were not going to be dropped. Id. at 5-6. Judge Jayne ordered that defendant

be detained pending trial. Dkt. # 75.

Defendant objected to the detention order, arguing that defendant had informed relevant third

parties about his charges and that one of the third parties was prepared to provide testimony that

would corroborate defendant's assertion that they had discussed his charges. Dkt. # 76, at 1.

Defendant also argued that Judge Jayne misunderstood the nature of the loan transaction that

defendant entered into without permission of the probation office, and that the transaction was not

subject to that condition of release. Id.

On February 19, 2021, Judge Dowdell affirmed the detention order. Dkt. # 85. Reviewing

the order de novo, Judge Dowdell found that, even if defendant's witness were to testify, such

testimony "would be of no help to [defendant]" because it would have confirmed that defendant did

not satisfy the condition that he advise third parties placed at risk. Dkt. # 85, at 7. In addition, Judge

Dowdell also affirmed Judge Jayne's conclusion that defendant solicited and accepted a loan without

first obtaining permission of the probation office. Id. at 8-9. The $8,000 was for building repairs,

but it was clearly a loan and not compensation. That transaction was separate from the compensation

for the building repairs, contained in its own agreement and, most telling, defendant was to pay the

sum back, making it a loan that defendant entered into without permission of the probation office.

On April 2, 2021, defendant advised Judge Dowdell that he would like to change his plea. Thereafter, on April 9, 2021, defendant consented to appear before a United States Magistrate Judge to plead guilty to counts three and seven of the second superseding indictment, pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(A) plea agreement. Dkt. # 101; Dkt. # 114, at 2. A defendant faces a maximum sentence of 30 years imprisonment if convicted of bank fraud under 18 U.S.C. § 1344(2) (count three). In addition, a defendant faces a mandatory minimum and maximum term of imprisonment of two years to run consecutively to any other sentence if convicted of aggravated identity theft under 18 U.S.C. § 1028A (count seven).

At the change of plea hearing, plaintiff summarized the plea agreement. Dkt. # 114, at 6-7. Then, Magistrate Judge Christine D. Little asked defendant if he had an opportunity to review the plea agreement with his attorney before the hearing, and defendant stated that he did. Dkt. # 114, at 7. Judge Little asked defendant if he understood the plea agreement and defendant responded, "I did, to the best of my knowledge." Dkt. # 114, at 7. The plea agreement contained an appellate and post-conviction waiver, and Judge Little asked defendant if he had an opportunity to review it with his attorney and defendant responded that he did. Id. at 8. Judge Little also directly asked defendant if he understood that he was giving up or limiting his right to appeal and collaterally attack his sentence and conviction by entering into the plea agreement and pleading guilty, and defendant stated that he did. Id.

The plea agreement contains non-binding stipulations that the specific offense level of United States Sentencing Guideline (USSG) § 2B1.1(b)(1)(G) applies as to count three, and that the specific offense characteristics including ten or more victims in USSG § 2B1.1(b)(2)(A) does not apply. Dkt. # 104, at 17. Judge Little reviewed these non-binding stipulations with defendant during the change

of plea hearing and asked defendant if he understood that "the Court and the probation office are not bound by those terms in addressing [his] sentence," to which defendant replied, "[y]es, Your Honor." Dkt. # 114, at 17.  Judge Little explained to defendant that his sentence "will be determined by a combination of advisory sentencing guidelines, possible authorized departures from those guidelines, and other sentencing factors."  Id.  Then Judge Little asked defendant if he understood that the "plea agreement contains a provision by which [he] and the government are agreeing not to seek such departures and variances" and defendant stated that he did.  Id.

Judge Little asked if defendant and his attorney had discussed how the advisory sentencing guidelines may apply to him, and defendant stated that they had.  Id.  Judge Little asked defendant if he understood that the sentence ultimately imposed might be different from any estimate Stidham might have given the defendant, and defendant stated that he did.  Id. at 18.

Judge Little reviewed the statutory maximum and minimum penalties with defendant, including corrections to the statutory penalties that were made during the hearing, and defendant stated that he understood the penalties.  Id. at 9-13.  Judge Little then reviewed the forfeiture and restitution sections of the plea agreement, and defendant stated that he understood them.  Id. at 15. Judge Little asked defendant if he understood that the plea of guilty might cause him to be deported and that he agreed to assist the Department of Homeland Security in obtaining his removal from the United States, and defendant stated that he did.  Id. at 16.

Judge Little asked defendant if he had discussed all of these possible consequences with his lawyer and defendant stated, "yes, Your Honor."  Id. at 16.  Judge Little confirmed, asking defendant, "[s]o you've had enough time to do that?" to which defendant responded, "[y]es, Your Honor."  Id. at 16-17.

Then Judge Little asked defendant if he needed "any further explanation or time with [his] counsel." Id. at 18.  Defendant replied that he "still ha[d] a few questions" but he did not want "to miss this plea deal because it's a – it's better than going to trial." Id.  Because of the corrections made to the plea agreement during the hearing, Judge Little again made certain that defendant understood all of the consequences of the plea and defendant stated that he did. Id. at 19.  Judge Little asked defendant if he was "fully satisfied" with his counsel and the advice his lawyer provided, and defendant indicated that he was. Id.

Defendant confirmed that he received a copy of the second superseding indictment and had an opportunity to read it. Id. at 20.  After Judge Little reviewed the charges and the elements with him, defendant confirmed that he understood them and had visited with his lawyer about them. Id. at 21.

After defendant acknowledged that he understood the consequences of his plea, defendant admitted to the essential elements of the offenses, specifically that he made false payroll documents to obtain loans and he used the identification of another person in applying for the loans. Dkt. # 114, at 22-23.  Defendant then pleaded guilty to counts three and seven of the second superseding indictment. Dkt. # 100; Dkt. # 114, at 22-24.  Judge Little found defendant to be "fully competent and capable of entering an informed plea" and that he was "aware of the nature of the charges and the consequences of the plea." Dkt. # 114, at 24.  Finally, Judge Little found that defendant's guilty plea was "a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." Id. at 24-25.  Judge Little adjudged defendant guilty and set the case for sentencing before Judge Dowdell. Id. at 25.  On April 21, 2021, prior to sentencing, Stidham moved to withdraw. Dkt. # 106.  Judge Dowdell granted the motion and appointed Stall

to represent defendant.  Dkt. # 107; Dkt. # 108.  On April 30, 2021, Judge Dowdell granted plaintiff's motion for a forfeiture money judgment and preliminary order of forfeiture, in accordance with the plea agreement.  Dkt. # 112.

On June 9, 2021, the probation office disclosed defendant's presentence investigation report (PSR).  The base offense level for count three was seven, and the probation office correctly calculated an 18-level enhancement under USSG § 2B1.1(b)(1)(J), because the intended loss amount of $5,430,585 is greater than $3,500,000 but less than $5,500,000.  In addition, the probation office also correctly determined that the specific offense characteristics that the offense involved ten or more victims under USSG § 2B1.1(b)(2)(A) applied, so defendant received an additional two level enhancement.  PSR, at 12.  After a three level reduction for acceptance of responsibility, the total offense level was 24.  Defendant had no prior criminal history and his criminal history category was I.  The advisory guideline range for defendant's offense was 51-63 months as to count three, and a consecutive mandatory two-year term as to count seven.  PSR at 12-13, 15.

The guideline range for count three was higher than what the parties had contemplated in the plea agreement.  Dkt. # 104, at 17.  The parties had entered a non-binding stipulation that the intended loss was only $300,000, and so a 12-level enhancement would apply under USSG § 2B1.1(b)(1)(G), rather than the 18-level enhancement calculated in the PSR.  The parties also entered a non-binding stipulation that USSG § 2B1.1(b)(2)(A) did not apply, but the PSR determined that it did, which resulted in an additional two level enhancement.  Altogether, the parties' non-binding stipulations in the plea agreement called for a total offense level of 16, rather than the offense level 24 that the PSR correctly calculated.  The plea agreement contained a departure and variance waiver. Dkt. # 104, at 4.  In spite of that, the parties entered a supplement to the plea agreement to allow a

8

joint motion for downward departure/variance (Dkt. # 119), and filed a joint motion for downward departure/variance (Dkt. # 118), requesting an eight-level downward variance as to count three.  The parties contended that, although neither the Court nor the probation office was bound by the stipulations in the plea agreement, the range of punishment as a result of those stipulations "is just and fair under the circumstances involved in this matter and as compared to the disposition of other conspirators in this case and defendants charged with similar crimes in other cases."  Dkt. # 118, at 2.

In June 2021, Judge Dowdell took senior status and this case was reassigned to the undersigned on June 24, 2021.  Dkt. # 121.  Sentencing was set for July and, after one continuance due to COVID concerns, defendant was sentenced on August 6, 2021.  Dkt. ## 135, 147.

At sentencing, this Court asked defendant if he had read the PSR with Stall, his attorney at the time, and defendant stated that he had.  Dkt. # 164, at 3.  The Court noted that Stall had filed 13 objections to the characterization of some of the facts of the case in the PSR, and that the PSR was subsequently revised but nine objections remained outstanding.  Id. at 4.  The Court found that the remaining nine objections "have no impact or bearing on the advisory guideline range" and, therefore, pursuant to Federal Rules of Criminal Procedure 31(i)(3)(B), "ruling on defendant's remaining objections is unnecessary as such a ruling would have no effect on sentencing."  Id.  The Court asked Stall if, other than the nine outstanding objections, there were any other objections, corrections, or changes, and Stall confirmed there were not.  Id. at 4-5.

The Court then granted plaintiff's motion for third point reduction for acceptance of responsibility, and noted that the probation office had accounted for that in calculating the total offense level in the PSR.  Id. at 5.  Then the Court noted it had "received, reviewed and considered"

defendant's sentencing memorandum (Dkt. # 120), plaintiff's response (Dkt. # 126), and the joint motion for departure/variance (Dkt. # 118), and asked both parties if there were any factual or legal issues in dispute.  Dkt. # 164, at 5-6.  Plaintiff and defendant confirmed there were no such issues in dispute, and the Court accepted the PSR as its findings of fact.  Id. at 5-6.

The Court then "accept[ed] the plea agreement insofar as paragraphs 14 and 15, [pertaining to further prosecution and dismissal of the remaining claims, respectively,] are covered by Rule 11(c)(1)(A)."  Id. at 7.  The Court asked Stall if he wished to make any remarks on behalf of defendant, and Stall requested that the Court grant the joint motion for "downward departure," and to sentence defendant "to the least amount of time possible under the guidelines, under the plea agreement, under the joint motion, and all the other documents before this Court."  Id. at 8.  The Court then asked defendant if he wished to make additional remarks on his own behalf, and defendant addressed the Court, taking "full responsibility for [his] actions and deeply regret[ting]the steps that [he] took."  Id. at 8-9.  He stated that he "didn't think of the consequences" and realized that his "mindset at [the time of the offenses] was corrupt and [his] action[s were] criminal."  Id. at 9.

After hearing from both parties, the Court granted the joint downward variance request, finding that the non-binding stipulation in the plea agreement was "reasonable and does not undermine the statutory purposes of sentencing."  Id. at 12.  The Court varied downward to an offense level of 16, which, combined with a criminal history category of I, resulted in a guidelines range of 21-27 months as to count three.  Id. at 12-13.  The mandatory sentence of 24 months as to count seven, to run consecutively to all other counts, remained unaffected by the variance.  Id. a 13. After considering the nature of the offense, defendant's lack of criminal history, and his personal

10

characteristics, the Court determined that "a sentence within the variance guideline range will serve as an adequate deterrent to his defendant as well as others, promote respect for the law, provide just punishment for the offenses, and provide protection for the public." Id. The Court imposed a total 48-month term of imprisonment. Id. at 14. The sentence consists of 24 months as to each of counts three and seven, to run consecutively. Id.; Dkt. # 147; Dkt. # 148. In addition, the Court ordered the forfeiture money judgment and preliminary order of forfeiture (Dkt. # 112) incorporated by reference, and ordered that defendant pay restitution. Dkt. # 164, at 14; Dkt. # 147; Dkt. # 148. The Court furthered ordered that, upon release from imprisonment, defendant will be placed on supervised release for five years as to count three and one year as to count seven, to run concurrently. Dkt. # 164, at 15; Dkt. # 147; Dkt. # 148.

The Court asked both parties if they knew of any legal reason why the sentence could not be imposed as stated, and both confirmed there was not. Dkt. # 164, at 17. The Court then advised defendant that, "subject to [his] waiver of appellate and post-conviction rights that was contained in [his] written plea agreement, [he] may have a right to appeal the sentence." Id. Finally, the Court asked plaintiff to move to dismiss the original indictment, the superseding indictment, and counts one, two, and fifteen through seventeen of the second superseding indictment as to defendant, plaintiff obliged, and the Court dismissed those outstanding indictments and charges. Id. at 17-18.

On August 16, 2021, defendant filed a notice of appeal to the Tenth Circuit Court of Appeals. Dkt. # 152. On November 12, 2021, the Tenth Circuit dismissed defendant's appeal, enforcing the waiver of his appellate rights that defendant agreed to in the plea agreement. Dkt. # 194, at 1-2; Dkt. # 104, at 3.

11

On November 29, 2021, defendant filed a § 2255 motion and affidavit in support, seeking to vacate his conviction based on claims of ineffective assistance of counsel. Dkt. # 209; Dkt. # 210. Defendant's motion lists four grounds, and his affidavit includes a fifth. Then on February 28, 2022, defendant filed a motion to investigate court transcripts of his hearings, which also purported to raise a new allegation relevant to his § 2255 motion. Dkt. # 233. The Court granted the motion to investigate and determined that the transcripts were a complete and accurate representation of the on-the-record courtroom proceedings, but left any new § 2255 issues pending. Dkt. # 272.

## II.

Defendant's § 2255 motion (Dkt. # 209) asserts four grounds for relief. Defendant argues that Stidham was ineffective for: 1) failing to give defendant the sentencing guidelines and/or the plea agreement before the change of plea hearing; 2) improperly coaching defendant to falsely answer yes in response to Judge Little's questions; 3) "neither coming to court with a copy of our deal nor letting [defendant] know [the] court date"; and that Stall was ineffective for 4) prohibiting defendant from advising the sentencing judge about Stidham's alleged earlier misconduct. Dkt. # 209, at 4-8. In addition, defendant's affidavit (Dkt. # 210) asserts a fifth ground for relief: that Stidham was ineffective for not calling Lonnie Trecek as a witness in defendant's detention hearing. Dkt. # 210, at 1. Finally, defendant's motion to investigate transcripts (Dkt. # 233) alleges a sixth ground for relief: that Stidham was ineffective for failing to object or inform the court during his detention hearing that he was not employed by Brookside Executive Suites, a fact which defendant seems to believe affected the outcome of that hearing. Dkt. # 233, at 5-6.

Plaintiff responded to defendant's initial motion, including affidavits from both Stidham and Stall. Dkt. ## 235, 235-1, 235-2. Plaintiff argues that Stidham effectively represented defendant

through both the detention and change of plea hearings, and, even if any of the grounds alleged amount to deficiencies, defendant was not prejudiced as a result.  Dkt. # 235.  Plaintiff also argues that Stall effectively advocated for defendant during sentencing, and that defendant was "never barred" from raising his concerns about Stidham's earlier representation to the Court.  Dkt. # 235, at 13.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).   In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment

significance." Thus, the prejudice prong of the <u>Strickland</u> test does not require that any increase in sentence must meet a standard of significance. <u>See</u> <u>United States v. Horey</u>, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

## A. Representation During Defendant's Detention Hearing

Defendant's fifth and sixth grounds for relief, presented in the affidavit (Dkt. # 210) and motion to investigate transcripts (Dkt. # 233), respectively, allege that Stidham was ineffective during defendant's detention hearing because he did not call as a witness Lonnie Trecek, the relevant third party whose interactions and transactions with defendant were the focus of the hearing, and because he did not object or correct the fact that defendant was not employed by Brookside Executive Suites. Dkt. # 210, at 1; Dkt. # 233, at 5-6. Plaintiff was not ordered to respond specifically to defendant's allegation pertaining to his employment status, but otherwise argues that Stidham "competently represented" defendant during the detention hearing and that defendant "cannot prove prejudice." Dkt. # 235, at 12.

The Court finds that neither of these allegations amounts to ineffective assistance of counsel. First, defendant's assertion that Stidham did not object or correct the fact that defendant was not employed by Brookside Executive Suites is not supported in the record. Instead, the record reflects just the opposite. During the detention hearing on February 1, 2021, Stidham offered into the record a letter from Trecek that stated, "[t]his letter is to clarify that [defendant] is not an employee of Brookside Executive Suites." Dkt. # 82, at 13. Stidham then confirmed the same during the direct examination of defendant. <u>Id.</u> While the petition for summons (Dkt. # 64) may have incorrectly referred to Trecek and Brookside Executive Suites as defendant's employer, Stidham clearly remedied that error during the detention hearing.

14

More importantly, the employment issue and defendant's exact relationship to Brookside Executive Suites was immaterial to the allegations that defendant violated the financial conditions of his pretrial release. This is evident in Judge Jayne's thorough explanation of the basis for the order of detention, which made clear that defendant's employment status with Brookside Executive Suites was simply not a factor. Dkt. # 83. The issue was whether defendant advised a relevant third party who may be at risk because of the charged offenses. Relevant third parties are not limited to employers. Here, defendant had a business relationship with Trecek, in which Trecek paid defendant more than $40,000 for repairs to Trecek's property, and so Trecek was a relevant third party to whom, under the circumstances, defendant should have clearly disclosed his pending charges. Judge Jayne considered the violation in that context, and not whether defendant was an employee of Brookside Executive Suites. Therefore, the Court denies defendant's sixth ground for relief.

As to defendant's assertion that Stidham was ineffective for failing to call Trecek as a witness during the detention hearing, the Court finds that his decision was not prejudicial. First, "[w]hether to call a particular witness is a tactical decision and, thus, a 'matter of discretion' for trial counsel." United States v. Miller, 643 F.2d 713, 714 (10th Cir. 1981). A strategic decision not to call witnesses is entitled to deference, and this Court may not second-guess defense counsel's informed decision that a certain witness should not have been called to testify. See Parker v. Scott, 394 F.3d 1302, 1323 (10th Cir. 2005). In this case, Stidham's decision to offer into evidence a letter from Trecek rather than call Trecek as a witness was a reasonable one, because plaintiff would have had the opportunity to thoroughly cross-examine Trecek (if called) about the financial transactions, and whether defendant had advised Trecek that he may be at risk of the charged offense. But even if it was not, the decision had no prejudicial effect on the outcome of the hearing. Judge Jayne was quite

15

clear that not having Trecek's testimony was not prejudicial.  After Stidham informed her of the substance of Trecek's planned testimony, Judge Jayne stated that such testimony "will not change my opinion and it will not change my mind" and "will make no difference to the Court's decision" concerning the order to detain defendant. Dkt. # 83, at 7.  Judge Dowdell's de novo review of Judge Jayne's detention order affirmed the decision, finding that Trecek's proposed testimony "would be of no help" to defendant because it would still have shown that defendant failed to affirmatively and fully disclose the charges against him as required by the condition.  Dkt. # 85, at 7.  Clearly, defendant suffered no prejudice as a result of Stidham not calling Trecek as a witness; therefore, the Court denies defendant's fifth ground for relief.

## B.  Representation During the Change of Plea Hearing

Defendant's first three grounds for relief, presented in his § 2255 motion (Dkt. # 209), allege that Stidham was ineffective during defendant's change of plea hearing because he:  1) failed to provide defendant with the sentencing guidelines and/or the plea agreement; 2) improperly coached defendant's responses to Judge Little's questions; and 3) did not inform defendant of the hearing date and did not bring a copy of the plea agreement to court.  Dkt. # 209, at 4-7.  The Court finds that defendant was not prejudiced by any of these allegations.

If a defendant has pleaded guilty, as is the case here, prejudice arises only if, but for counsel's errors, the defendant would not have pleaded guilty and would instead have gone to trial.  Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001).  An insistence that defendant would have gone to trial but for counsel's errors is "necessary" to entitle a defendant to relief.  Id.  At no point in his pleadings does defendant assert that he would have gone to trial.  See generally Dkt. ## 209, 210, 233.  In addition, Stall's affidavit states that defendant discussed his complaints about Stidham with

Stall, but "at no time did [defendant] affirmatively state" that defendant "wished to withdraw his guilty plea and proceed to jury trial." Dkt. # 235-2, at 2.  Without meeting this low bar, defendant cannot prove that he was prejudiced by defense counsel's alleged deficiencies.

Even if defendant had claimed he would have withdrawn his plea and gone to trial, he still was not prejudiced by any of the individual allegations.  Defendant's first allegation is that he was not given a copy of the sentencing guidelines. Dkt. # 209, at 4.  However, it does not matter whether defendant received the sentencing guidelines prior to the change of plea; all that matters is whether defendant understood the guidelines and the consequences of his guilty plea.  Defendant stated multiple times during the change of plea hearing that he understood.  Judge Little asked defendant if he and his attorney had discussed how the advisory sentencing guidelines may apply to him, and defendant stated that they had.  Dkt. # 114, at 17.  Stidham's affidavit supports this, stating that he "never show[s] a criminal defendant the Sentencing Guidelines," but rather "discuss[es] with them how the actual guidelines might be applied in their case," and that is what he did in defendant's case. Dkt. # 235-1, at 2.

Insofar as defendant also alleges that he also did not see the plea agreement prior to the change of plea hearing, that, too, would not have prejudiced him.  Plaintiff and Judge Little reviewed every aspect of the plea agreement with the defendant during the hearing and the defendant stated that he understood each portion.  Dkt. # 114, at 6-16.  Judge Little asked defendant if he had an opportunity to review the plea agreement with his attorney before the hearing, and defendant stated that he did.  Id. at 7.  Stidham confirms this in his affidavit, stating that he and defendant "reviewed every word of the plea agreement." Dkt. # 235-1, at 2.  Judge Little asked defendant if he understood the plea agreement and defendant responded, "I did, to the best of my knowledge." Dkt. # 114, at

7.  Judge Little also asked defendant if he had discussed all of these possible consequences with his lawyer and defendant stated, "yes, Your Honor."  Id. at 16.  Judge Little confirmed, asking defendant, "[s]o you've had enough time to do that?" to which defendant responded, "[y]es, Your Honor." Id. at 16-17.  Then Judge Little asked defendant if he needed additional time to consult with Stidham, to which the defendant responded, "I still have a few questions, but as far as I don't want to miss this plea deal because it's a – it's better than going to trial." Id. at 18.  Defendant's exchange with Judge Little confirms that defendant understood the terms of the plea agreement he discussed with his attorney, and that it was more advantageous to him than going to trial.  As such, he suffered no prejudice by not receiving a copy of the sentencing guidelines and/or the plea agreement.  Therefore, defendant's first ground that Stidham was ineffective for not providing him with copies of these documents is denied.

Next, defendant alleges that Stidham was ineffective for improperly "coaching" defendant to "falsely answer yes" to Judge Little's questions during the change of plea hearing.  Dkt. # 209, at 5.  This allegation is neither supported in his petition nor the record.  First, Stidham states in his affidavit that he "never coached [defendant] to respond in any manner to [Judge Little's] questions." Dkt. # 235-1, at 2.  In addition, defendant's motion does not identify any specific instances in which he falsely responded yes.  Instead, before defendant's statements in the change of plea hearing, he was sworn and stated that he understood he was under oath and could be prosecuted for perjury for making false statements.  Dkt. # 114, at 3.  He proceeded to tell Judge Little that he wished to plead guilty pursuant to the plea agreement because he knew it was a better deal than going to trial.  Id. at 18.  He also indicated that he was satisfied with the counsel and advice provided by Stidham.  Id. at 19.

18

At one point during the change of plea hearing, Judge Little stated, "[l]let me ask [defendant] without you Mr. Stidham," and proceeded the colloquy with defendant. Id. at 18. Even if that indicates that Stidham helped defendant with his responses up to that point in the hearing, there is nothing to indicate the responses were false or prejudiced defendant. Again, defendant stated that he wished to plead guilty because he understood it was a better deal than going to trial. Id. Judge Little found that defendant was "fully competent and capable of entering an informed plea" and that his plea was "knowing and voluntary." Dkt. # 24-25. Further, at no point after the change of plea hearing, including defendant's current motions, has defendant indicated that he would not have pleaded guilty and instead gone to trial. Therefore, defendant's second ground for relief is denied.

Finally, defendant alleges that Stidham was ineffective for failing to advise defendant of the court date and failing to bring a copy of the plea agreement to court. Dkt. # 209, at 7. Neither of these prejudiced defendant. First, defendant was in custody by the time of the change of plea hearing. Dkt. # 75. Therefore, any alleged failure by Stidham to communicate the court date did not impact defendant's ability to attend. This is also clear because defendant did, in fact, attend the hearing in person, and so was not prejudiced by any lack of notice. Second, while Stidham did not bring a copy of the plea agreement to the hearing, he obtained a copy of it and both he and defendant signed it in open court. There is no allegation that the copy of the plea agreement defendant signed was any different than that which he had already reviewed with Stidham and understood, other than the editorial corrections made by Judge Little at the hearing. Therefore, defendant's third ground for relief is also denied because defendant did not suffer any prejudice because he attended the hearing in person and signed the plea agreement he had previously reviewed with his attorney.

## C. Representation During Defendant's Sentencing

Defendant's fourth grounds for relief alleges that his sentencing counsel, Eric Stall, was ineffective for "prohibiting" defendant from alerting the undersigned sentencing judge about Stidham's alleged misconduct.  Dkt. # 209, at 8.  According to defendant's § 2255 motion, Stall "prohibit[ed] [defendant] from filing the motion."  Id.  Stall's decision to not file a motion related to defendant's concerns about Stidham's representation was reasonable.  Stall states that "[a]fter several meetings" with defendant, he "determined that [defendant's] complaints [about Stidham] were not of the kind that warranted [him] bringing to the Court's attention" and so he "declined to do so."  Dkt. # 235-2, at 2.  Refusing to file a motion is often within the boundaries of effective legal advocacy.  United States v. Rushin, 642 F.3d 1299, 1308 (10th Cir. 2011) (stating that "a reasonable attorney in the sound exercise of his or her professional judgment arguably might have decided to forgo the filing of a motion to dismiss the indictment as largely ineffective, an imprudent use of limited resources, or even unwarranted gamesmanship").

In this case, Stall may have reasonably believed that filing a motion concerning Stidham's earlier representation of defendant would have been ineffective, imprudent, or even meritless, for many of the same reasons already discussed herein.  In fact, Stall states as much in his affidavit: "I . . . never opined that prior counsel's conduct constituted prejudice" and "[defendant] had been adequated represented."  Dkt. # 235-2, at 2.  Given that Stall did not believe Stidham's conduct constituted ineffective assistance of counsel, it was perfectly reasonable in the sound exercise of his professional judgment to not file such a motion.

In addition, contrary to what he suggests in his § 2255 motion, nothing prohibited defendant from raising his concerns with the Court.  First, Stall's affidavit states that, while he declined to file a motion, he "advised [defendant] that he could write a letter to the Court if he so desired."  Id.

20

Defendant also addressed the Court directly during his sentencing and decided not to raise these concerns at the time.

Finally, Stall's failure to file a motion on the issue did not prejudice defendant for the same reason the other alleges grounds do not: "at no time" has defendant "affirmatively state[d]" to Stall or this Court that "he wished to withdraw his guilty plea and proceed to jury trial." Id. In addition, filing a motion alleging ineffective assistance of counsel or raising those concerns with the Court at sentencing would not have impacted defendant's sentence because defendant had already entered a valid guilty plea, and this Court sentenced defendant in accordance with the non-binding stipulations in the plea agreement. Therefore, defendant's fourth ground for relief is denied because, even if Stall had filed a motion concerning Stidham's representation of defendant, defendant had already pleaded guilty, did not move to withdraw his guilty plea, and the Court still would have sentenced him within the variance guideline range based on all of the relevant factors discussed during the sentencing hearing.

In sum, the Court finds that defendant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Dkt. # 209) should be denied.

## III.

Pursuant to 28 U.S.C. § 2253, a defendant is required to obtain a certificate of appealability (COA) before appealing a final order in a proceeding under 28 U.S.C. § 2255. Section 2253(c) instructs that the court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A defendant can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further

proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a COA should not issue because defendant has not made a substantial showing of the denial of a constitutional right. The Court does not find that the issues raised by defendant are debatable among jurists or that the Tenth Circuit would resolve the issues differently, and defendant has not made a substantial showing of the denial of a constitutional right.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 209) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that defendant's emergency motion to expedite action on pending 28 U.S.C. § 2255 motion (Dkt. # 284) is **moot**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability on any issue raised in defendant's § 2255 motion.

**DATED** this 22nd day of December, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE